UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES LAM, III, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:24-cv-01282-SEP |
| ) | |
| VITALCORE HEALTH STRATEGIES, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Leave to Commence this Civil Action without Payment of the Required Filing Fee, Doc. [2]. On review of the application and financial information provided therein, the Court grants Plaintiff's motion and waives the filing fee in this matter. *See* 28 U.S.C. § 1915(a)(1). For the reasons set forth below, the Court partially dismisses Plaintiff's Complaint and orders the Clerk to issue process or cause process to be issued on the non-frivolous portions of the Complaint.

### LEGAL STANDARD ON INITIAL REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court must accept factual allegations in the complaint as true, but is not required to "accept as true any 'legal conclusion couched as a factual allegation'" (quoting *Iqbal*, 556 U.S. at 678)).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal

construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Still, even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## THE COMPLAINT

Plaintiff James Lam, III, a civil detainee currently residing at Fulton Reception & Diagnostic Center (FRDCC), brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights during his pretrial incarceration at St. Charles County Department of Corrections.  Doc. [1].  Plaintiff brings this action against VitalCore Health Strategies, an unnamed psychiatrist, a counselor he identifies as Unknown Summer, another counselor he identifies as Fred Unknown, a medical supervisor he identifies as David Unknown, and a medical administrator he identifies as Sarah Unknown.  *See* Doc. [1] at 2, 5.  Plaintiff brings this action against the individual Defendants in their individual capacities and against VitalCore in its official capacity.  *Id.*

The facts, as alleged, are as follows.  In November of 2023, an unnamed psychiatrist diagnosed Plaintiff with Bipolar Disorder, Post-Traumatic Stress Disorder, and Severe Anxiety. *Id*. at 6.  He was prescribed five daily medications: Zyprexa and Buspar in the morning, and Zyprexa, Trazadone, and Buspar in the evening.  *Id.*

On or about February 26, 2024, Plaintiff had a physical altercation with another inmate in the H-Pod dayroom.  *Id*. at 7.  He was cuffed and taken to "the hole" in J-Pod.  *Id*.  Plaintiff pled guilty to the altercation.  *Id*.  When officers were packing Plaintiff's cell in H-Pod, they found his evening medicine sitting on his desk in his cell.  *Id*.  He was never formally written up for having "contraband," but his original conduct violation for fighting was amended from seven (7) days in J-Pod to thirty (30) days.  *Id*.

On February 29, 2024, Plaintiff was taken to the medical wing for a video meeting with psychiatry provider Dr. Unknown and medical counselor Unknown Summer.  *Id*. at 8.  Dr.

Unknown told Plaintiff that he was undergoing diversion counseling. *Id*. Dr. Unknown asked Plaintiff to explain why his evening medication was found sitting on his desk in his cell. *Id*. Plaintiff told Dr. Unknown and Unknown Summer that, on the evening of February 25, 2024, he had been at his desk writing a letter when the correctional officer and medication nurse came through with the evening medication. *Id*. When Plaintiff was handed his medication, the nurse and correctional officer got an emergency call, slammed the chuckhole and ran out of the pod, leaving Plaintiff standing with his medication. *Id*. Plaintiff then went back to writing his letter. *Id*. Plaintiff later went to bed and forgot to take his medication. *Id.* Dr. Unknown warned Plaintiff that any further reports of medication hoarding could result in discontinuation, and that the incidents were reviewed according to the diversion policy. *Id*. No change in Plaintiff's treatment occurred at that time. *Id.*

On February 29, 2024, Nurse Jackie and a correctional officer came to Plaintiff's cell for his evening medication pass. *Id*. at 9. Nurse Jackie appeared angry and aggressive. *Id*. Plaintiff believes she was angry because she had been reprimanded after Plaintiff had been found with pills in his cell after the evening medication pass on February 25, 2024. *Id.* When Plaintiff reached his hand out for his medication on February 29, 2024, Nurse Jackie stated, "Since you wanna hoard your meds, from now on I'm on your ass." *Id*. Then, as she held the medication out of reach, she kept asking if he wanted the medication over and over. *Id*. Nurse Jackie finally told him, "If you fuck up, I'll make sure they take you off meds." *Id*. This occurred over the course of the next several evenings: Nurse Jackie held Plaintiff's medication out of reach and asked him if he was sure he wanted it, making him beg for the medication from her. *Id.*

On the evening of March 8, 2024, Correctional Officer Liggins and Nurse Jackie came to his cell for the medication pass, and Nurse Jackie again held his pills out of reach. *Id*. at 10. When she finally relented and provided him with the medication, Plaintiff placed the three pills in his mouth and took a sip of water. *Id*. Although he was able to swallow two of the pills, the third pill got stuck in his mouth behind a gap in his back molars. *Id*. When he did a finger sweep to dislodge the pill, Nurse Jackie demanded to see the inside of his mouth. *Id*. Plaintiff held up the pill to show her that he still needed to swallow the pill. *Id*. Nurse Jackie then accused Plaintiff of attempting to "cheek" his medication. *Id*. She stated, "Your [sic] done, I promise your [sic] done." *Id*. That evening, Nurse Jackie created an official report accusing Plaintiff of attempting to "cheek" his medication, and she recommended that Plaintiff's

3

medication be discontinued.  *Id.*  Plaintiff and Correctional Officer Liggins also filed reports.  *Id*. at 11.

On the morning of March 9, 2024, Plaintiff's psychiatric medications were discontinued and all psychiatric treatment was stopped.  *Id*.  That morning, Plaintiff spoke with Correctional Officer Liggins, who told Plaintiff that the incident appeared to be an accident and not a form of "cheeking."  *Id*.  Liggins told Plaintiff that he would act as a witness on Plaintiff's behalf.  *Id*.

On March 10, 2024, Plaintiff filed a medical service request (MSR) giving a detailed account of the incident, seeking to have his medication reinstated and indicating that Officer Liggins was willing to be a witness to the incident.  *Id*.  Unknown Summer responded to the MSR that, per the psychiatry provider and the diversion counseling policy, as explained on February 29, 2024, Plaintiff had been told that any further reports would mean the loss of his medication.  *Id*. at 12.  When Plaintiff appealed and requested to speak to the provider, he was told by Unknown Summer that he was being placed on the list to speak to the provider.  *Id.*

Plaintiff asserts that he filed an MSR on April 18, 2024, asking again to see the psychiatry provider and to restart his medication.  Doc. [1-1] at 1.  He informed the medical staff that he was prepared to file a lawsuit to receive his medication.  *Id.*  Plaintiff received a response from medical supervisor David Unknown on April 21, 2024, stating that the provider, presumably the psychiatrist, had discontinued his psychotropic medication because he was hoarding the medication.  *Id.*

On Plaintiff's understanding of the diversion counseling policy, the decision to discontinue medication is made on a case-by-case basis.  Doc. [1] at 12.  Plaintiff's version of the "cheeking" incident was never sought by Dr. Unknown; nor was Correctional Officer Liggins's version.  *Id*. at 13.  His antipsychotic medications were discontinued on the word of Nurse Jackie.  *Id.*  Plaintiff complains that he suffered from nausea, loss of appetite, vomiting, deep depression, insomnia, and severe anxiety, for which he received no medical care.  *Id*.  Plaintiff also states that he experienced irregular heartbeats over the course of three to five weeks.  He declared a medical emergency for his heart problem and a nurse administered an EKG.  *Id*.

On April 25, 2024, approximately 47 days after his medication was abruptly discontinued, Plaintiff met with Dr. Unknown and Unknown Summer.  *Id*. at 14.  At this meeting, Plaintiff attempted to challenge Nurse Jackie's "cheeking" accusations.  *Id*.  Plaintiff offered Correctional Officer Liggins as his witness, but the psychiatrist refused to talk to Liggins.  *Id*.  Plaintiff also asked if his medication could be crushed, but the psychiatrist said no.  *Id*.

4

Plaintiff begged for any kind of care that the psychiatrist could offer. *Id*. The psychiatrist eventually offered cognitive behavioral therapy, which Plaintiff accepted. *Id*. at 15.

On July 19, 2024, Plaintiff's criminal attorney contacted medical personnel at the St. Charles County Department of Corrections regarding Plaintiff's mental health needs, and on July 25, 2024, a new psychological evaluation was performed. *Id*. at 15-16. Plaintiff was prescribed Zyprexa, which the psychiatrist ordered should be crushed prior to administration. *Id*. at 16. At the time, Plaintiff had been without psychological medication for 137 days. *Id*. Plaintiff later inquired about adding back his other medications, but his request was denied because of the prior "cheeking" incident. *Id.*

On August 1, 2024, Plaintiff submitted a new MSR again refuting Nurse Jackie's version of the "cheeking" incident and offering to have Correctional Officer Liggins act as a witness. *Id*. Unknown Summer responded to the MSR on August 2, 2024, that no changes would be made to Plaintiff's medication as he had seen the psychiatrist the prior week, expressed an understanding of the matter, and signed a consent form for the current prescribed medication. Doc. [1-1] at 3.

Plaintiff appealed the denial of his MSR on August 2, 2024, stating that, without his medication, he has been locked in a "virtual mental nightmare." Doc. [1-1] at 4. On August 5, 2024, Plaintiff's appeal was denied by medical supervisor David Unknown. *Id*. at 5. Plaintiff was told that only the psychiatrist could prescribe the medication and that Plaintiff would need to discuss the matter with him. *Id*. When Plaintiff responded on August 5, 2024, asking for the matter to be referred to the psychiatrist, he was told by supervisor David Unknown that Plaintiff had just seen the psychiatrist and would be able to follow up with him in the future. *Id*.

On September 1, 2024, Plaintiff again submitted an MSR requesting an investigation into the false accusations of "cheeking" by Nurse Jackie. Doc. [1] at 20; *see also* Doc. [1-1] at 6. He also asked for an investigation into the medical personnel who had failed to provide him with medical care during his withdrawal from his psychotropic medications and during the 137-day period he was without psychological medications. Doc. [1] at 20. On September 3, 2024, Plaintiff received a response from medical administrator Sarah Unknown, stating that a note by "our medical professional" that Plaintiff had "cheeked" his medications was all the investigation that needed to occur and that all medical decisions were made by the provider, at the provider's discretion. *Id*. at 20-21; *see also* Doc. [1-1] at 7.

Plaintiff raises several claims against the named Defendants. He first claims that Nurse Jackie unlawfully reported him for "cheeking" as a means of disciplinary retaliation in violation

of the Fourteenth Amendment. *Id*. at 22. Plaintiff also asserts that the individual Defendants "failed to intervene/protect" him when they: (1) ignored his reports of staff misconduct regarding the discontinuation of his psychotropic medication; (2) failed to allow him to present his own version of events and/or evidence from Officer Liggins regarding the purported "cheeking" incident; and (3) denied him mental health treatment in an abrupt manner and for an extended period of time. *Id*. at 22-23. Similarly, Plaintiff asserts that the individual Defendants were deliberately indifferent to his serious medical needs when they discontinued his medication, failed to provide him alternative mental health treatment, and intentionally refused to re-evaluate his need for medication at intervals when he sought such evaluations.[1] *Id*. at 23.

Plaintiff also brings a *Monell* claim against Defendant VitalCore Health Strategies for ratifying Nurse Jackie's alleged misconduct and turning a "blind eye" to an unofficial custom. *Id*. at 23. Plaintiff argues that VitalCore should be held liable for its deficient polices in investigating staff misconduct and for its failure to train and adequately supervise its medical personnel. *Id*. at 19, 23.

Plaintiff seeks monetary and injunctive relief.

## DISCUSSION

### I. Individual capacity claims

Title 42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. Plaintiff fails to state a claim against medical counselor Fred Unknown.**

Plaintiff has named medical counselor Fred Unknown in the caption of his Complaint, but he has not alleged with any specificity that this Defendant did anything to violate his rights. *See Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th

---

[1] On June 18, 2025, Plaintiff filed a motion to add medical administrator Sarah Unknown as a defendant to Count II. *See* Doc. [14]. The motion is granted.

6

Cir. 2003) ("[W]e agree with the District Court that [Plaintiff] failed to state any claim whatsoever against [defendants] because he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations."). As such, the Court will dismiss Defendant Fred Unknown from this action.

### B. Plaintiff states a retaliatory discipline claim against Nurse Jackie.[2]

Under the Eighth Amendment, a "prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Emps.,* 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993)).

Plaintiff asserts that Nurse Jackie unlawfully and falsely reported him for "cheeking" as a means of retaliatory discipline in violation of the Eighth and Fourteenth Amendments. He claims that, after Nurse Jackie was reprimanded for failing to observe him swallow his medication, she became angry with him and retaliated by holding his medication out of his reach, threatening to cancel his medication, and then falsely reporting that he had "cheeked" his medication. At this stage of the litigation, those allegations are sufficient to state a retaliation claim against Nurse Jackie in her individual capacity. The Clerk will issue process on this claim.

### C. Plaintiff states a claim for deliberate indifference to serious medical needs.

Plaintiff seems to allege five separate deliberate indifference claims: (1) when his psychotropic medication was discontinued on March 9, 2024, and not resumed by Dr. Unknown until July 25, 2024—and then only partially; (2) when his requests to restart the psychotropic medication were denied, despite his pleas for assistance and multiple grievances to medical counselor Summer Unknown and medical supervisor David Unknown; (3) when his requests for medical assistance for withdrawal of the psychotropic medication were ignored; (4) when his request to Dr. Unknown on April 25, 2024, to have his psychotropic medication administered in other than pill form was denied; and (5) when his July 25, 2024, request for reinstatement of his psychotropic medication besides Zyprexa was denied by medical counselor Summer Unknown, medical supervisor David Unknown, and medical administrator Sarah Unknown.

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainees' claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of

---

[2] Although Plaintiff did not name Nurse Jackie in the caption of his Complaint, he made allegations against her in its body. The Court will therefore treat Nurse Jackie as a defendant in this action.

7

convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). The distinction "makes little difference as a practical matter," though, because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, [Plaintiff] 'must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs.'" *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (quoting *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999)). "An objectively serious medical need is one that is 'either obvious to the layperson or supported by medical evidence, like a physician's diagnosis.'" *Id*. (quoting *Roberson*, 198 F.3d at 648).

At this stage of the litigation, Plaintiff has properly alleged four of his claims for deliberate indifference to his serious medical needs: claims (1), (2), (4), and (5). The Court will instruct the Clerk to issue process, or cause process to issue, on those claims. But Plaintiff has failed to allege who denied him medical care for his withdrawal symptoms. Because liability in a § 1983 case is personal, the Court must dismiss any claim that does not specify who is responsible for Plaintiff's alleged harms. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990))). Plaintiff's claim for deliberate indifference to his serious medical need based on not receiving care for withdrawal symptoms is dismissed.

### D. Plaintiff fails to state a claim for failure to intervene/protect.

Plaintiff also asserts that the individual Defendants "failed to intervene/protect" him when they: (1) ignored his reports of staff misconduct regarding the discontinuation of his medication; (2) failed to allow him to present his own version of events or evidence from Officer

8

Liggins regarding the purported "cheeking" before discontinuing his medication; and (3) denied him mental health treatment in an abrupt manner and for an extended period of time.

Failure to protect and failure to intervene claims arise in the context of excessive force and inmate assault claims. *See Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) ("Most of our prior failure-to-protect cases arising out of an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man . . . ; or who was previously threatened or fought with the victim . . . ; or a victim who should have been better protected because of known prior inmate threats . . . ."). Plaintiff's allegations, by contrast, sound in due process—i.e., he seems to believe that he should have been afforded greater opportunity to be heard.

Plaintiff's Complaint establishes that he filed multiple grievances and letters and saw several mental health providers to discuss the alleged "cheeking" incident. And even though Plaintiff maintains that he could not use Liggins as a witness, he admits that both he and Liggins filed separate reports of the incident. Therefore, the Court cannot find that Plaintiff was denied due process based on the allegations in the Complaint. According to his own version of events, he had multiple opportunities to "litigate" the issue with the mental health staff at the correctional center, and the staff gave Plaintiff the same answer each time—that he had been found guilty of "cheeking" and was to be held to the jail's diversion policy.

## II. Plaintiff fails to state a claim against VitalCore Health Strategies in its official capacity.

Plaintiff sues VitalCore Health Strategies, the company that contracts with the St. Charles County Department of Corrections to provide health care to inmates. "A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to maintain a § 1983 claim against such a corporation, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal officer who has final authority regarding such matters." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (citation modified). To establish liability based on an "unofficial" policy or a "custom," a plaintiff must show "(1) the existence of a continuing, widespread,

persistent pattern of unconstitutional misconduct by the [corporate entity's] employees; (2) deliberate indifference to or tacit authorization of such conduct by the [corporate entity's] policymaking officials after notice to the officials of that misconduct; and (3) that [he] was injured by acts pursuant to the [corporate entity's] custom, i.e., that the custom was a moving force behind the constitutional violation." *Meier v. City of St. Louis*, 934 F.3d 824, 828 (8th Cir. 2019) (cleaned up and citations omitted).

Plaintiff has not alleged that any VitalCore policy or procedure was unconstitutional. He alleges, rather, that VitalCore had policies and procedures in place to address his situation, but that medical and correctional staff did not follow them. And while Plaintiff appears to allege that there is an unofficial custom of employees turning a "blind eye" to misconduct, Plaintiff fails to show "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Johnson v. Douglas Cnty. Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013). Instead of alleging other instances in which employees have turned a "blind eye" to misconduct, Plaintiff relies solely on his own experience, which is insufficient to establish a "persistent pattern."

Plaintiff's attempts to hold VitalCore liable for its deficient polices in investigating staff misconduct and its failure to train and supervise likewise fail. Plaintiff does not articulate the specific policy or policies that he believes are lacking at VitalCore, and VitalCore cannot be liable under 42 U.S.C. § 1983 merely because it "failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 395 (8th Cir. 2007)). And to state a failure to train or supervise claim, Plaintiff must allege that: "(1) [VitalCore's] officer-training practices were inadequate; (2) [VitalCore] was deliberately indifferent to the rights of others in adopting these training practices, and [VitalCore's] failure to train was a result of deliberate and conscious choices it made; and (3) [VitalCore's] alleged training deficiencies caused [Plaintiff's] constitutional deprivation." *Ulrich v. Pope Cty.,* 715 F.3d 1054 (8th Cir. 2013). Plaintiff has not pleaded such facts.

Thus, on initial review, the Court finds that Plaintiff fails to state a claim against VitalCore Health Strategies upon which relief can be granted.

### INFORMATION NECESSARY FOR SERVICE ON DEFENDANTS

In cases where a self-represented litigant is proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d). This provision is "compulsory." *Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (citing *Mallard v. United States Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 302 (1989)). As such, a litigant proceeding *in forma pauperis* is entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.,* 710 F.3d 782, 783 (8th Cir. 2013). **But it is a plaintiff's responsibility to provide the information necessary for service on Defendants.** *See Beyer v. Pulaski Cnty. Jail*, 589 Fed. Appx. 798, 799 (8th Cir. 2014) ("[A] plaintiff bears the burden of providing proper service information."). **That includes the first and last names of Defendants, because a Court is unable to effect service on Defendants without the proper names of Defendants.**

As soon as Plaintiff provides the proper first and last names of Nurse Jackie Unknown, psychiatry provider Dr. Unknown, medical counselor Unknown Summer, medical supervisor David Unknown, and medical administrator Sarah Unknown, the Court will issue process on Plaintiff's claims as set forth in this Order. He will have 30 days to do so.

### MOTION TO PRESERVE DIGITAL EVIDENCE

On November 6, 2024, Plaintiff filed a motion to preserve digital evidence. *See* Doc. [9]. Plaintiff seeks to have the St. Charles Correctional Center preserve all medical requests, medical grievances, and grievances relating to this action. *Id*. Because discovery has not yet commenced, the Court will deny Plaintiff's request without prejudice. Plaintiff may renew his request after service has occurred, Defendants have entered their appearance, and a Case Management Order has issued in this matter.

### MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also moved for appointment of counsel. A litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where 'the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel.'" *Id*. (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint counsel for an indigent litigant, a court considers such factors as "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting

11

testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Id*. (quoting *Phillips*, 437 F.3d at 794).

On review of the factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has so far demonstrated that he can adequately present his claims to the Court, and neither the factual nor the legal issues in this case appear to be complex. Because the Court recognizes that circumstances may change, the motion is denied without prejudice, meaning that the Court will consider future motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall add Nurse Jackie Unknown as a defendant in this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Add Party, Doc. [14], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Commence this Civil Action without Payment of the Required Filing Fee, Doc. [2], is **GRANTED**. As Plaintiff is a civil detainee, no filing fee will be assessed in this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to File Additional Information Relating to his Motion to Proceed *in Forma Pauperis*, Doc. [8], is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Preserve Digital Evidence, Doc. [9], is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that the Court shall issue process, or cause process to issue, as to Plaintiff's claim for retaliatory discipline against Nurse Jackie Unknown. Service of summons will not occur until Plaintiff provides the full first and last name of the defendant.

**IT IS FURTHER ORDERED** that the Court will issue process, or cause process to issue, as to four of Plaintiff's claims for deliberate indifference to his serious medical needs as to Defendants psychiatry provider Dr. Unknown, medical counselor Unknown Summer, medical supervisor David Unknown, and medical administrator Sarah Unknown. Service of summons will not occur until Plaintiff provides the full first and last names of the Defendants.

**IT IS FURTHER ORDERED** that Defendants VitalCore Health Strategies and medical counselor Fred Unknown are **DISMISSED from this action without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for deliberate indifference to his serious medical need based on denial of care for his withdrawal symptoms is **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claims for failure to intervene and/or failure to protect, which this Court construes as claims for violations of his due process rights, are **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel, Doc. [4], is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that within thirty (30) days of the date of this Order, Plaintiff shall provide the proper first and last names of Nurse Jackie Unknown, psychiatry provider Dr. Unknown, medical counselor Unknown Summer, medical supervisor David Unknown, and medical administrator Sarah Unknown, so that the Court may effect service of process on Defendants. Failure to provide proper first and last names for defendants will result in dismissal of this action pursuant to Federal Rule of Civil Procedure 4(m).

**IT IS FINALLY ORDERED** that an appeal of this Order of Partial Dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 7th day of July, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE